UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JOHN ANDREW KISTER,**<br>    Plaintiff,<br><br>v.<br><br>**SGT. AARON DAWSON,**<br>    Defendant. | 5:20-cv-871-CLM-HNJ |

# MEMORANDUM OPINION

The Magistrate Judge has entered a report, recommending that the court **DENY** Plaintiff John Andrew Kister's second motion for leave to conduct more discovery (doc. 30), **GRANT** Defendant Sgt. Aaron Dawson's motion for summary judgment (doc. 19), and **DISMISS** this case **WITH PREJUDICE**. (Doc. 33). Kister objects to the report and recommendation.

### A.   Cruel and Unusual Punishment

Kister first argues that there's a genuine dispute of material fact about whether Dawson violated the prohibition on cruel and unusual punishment by being deliberately indifferent to Kister's serious mental-health needs. (*See* Doc. 38 at 2, 3). According to Kister, the 609 days he spent in administrative segregation—which Kister characterizes as solitary confinement—shows that Dawson was deliberately indifferent to Kister's mental impairments.

"Segregation—also known as restrictive housing or solitary confinement—generally refers to the correctional practice of keeping a prisoner in a cell for 22.5 hours or more a day, usually in a single-person cell, only letting the prisoner out for brief 'yard' time and showers." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1235 (M.D. Ala. 2017). Kister's Morgan

County Jail grievances show that he generally spent at least four hours a day outside his cell and had access to a television, microwave, water keg, mailbox, Jail kiosk, and visitation monitor. (Doc. 1 at 7–8; Doc. 19-2 at 11–12, 23, 34; Doc. 19-3 at 12; Doc. 19-7 at 42). So the record "blatantly contradicts" Kister's claim that he was placed in solitary confinement. As a result, the court needn't accept this claim as true. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Plus, the mere fact Kister was in administrative segregation for 609 days doesn't create a fact question about whether Dawson was deliberately indifferent. *See Sheley v. Dugger*, 833 F.2d 1420, 1428–29 (11th Cir. 1987).

Kister also argues that his allegations that he was unkempt, depressed, lost 25 pounds, and dreamt of killing people while housed in administrative segregation shows that Dawson was deliberately indifferent to Kister's serious mental-health needs by keeping him in administrative segregation following this decompensation. (*See* Doc. 38 at 2). Kister misses the point. The question isn't whether Kister decompensated but whether Dawson ***was aware*** of this decompensation, or the substantial risk of decompensation, and did nothing. *See Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). As explained, by itself, Kister's placement in administrative segregation doesn't establish that Kister was at a substantial risk of serious harm. And Kister's requests and grievances didn't mention that he was suffering from these symptoms. (*See generally* Docs. 19-2 to 19-10). So there's no evidence that Dawson knew of Kister's decompensation.

To be sure, that Kister made repeated threats towards "Jesus freaks" might be evidence of decompensation. But the record establishes that Kister made these threats even before his placement in administrative segregation. And Dawson's awareness that Kister received mental-health treatment at an outside facility doesn't show that he knew Kister decompensated while in administrative segregation. (*See* Doc. 38 at 2). Given that Kister suffered from bipolar disorder (doc. 10 at 5), it wouldn't be unusual for him to receive mental-health treatment.

Kister next argues that Dawson placed him—and then kept him—in administrative segregation as punishment for Kister's religious views. (Doc. 28 at 2). Because Kister was a pretrial detainee during the relevant time, jail officials couldn't impose conditions of confinement as punishment. *Hamm v. Dekalb Cty.*, 774 F.2d 1567, 1572–74 (11th Cir. 1985). "Absent a showing of an expressed intent to punish" a restriction or condition isn't "punishment in the constitutional sense of that word" if it is "reasonably related to a legitimate governmental objective," such as an institution's interest in maintaining safety, internal order, and security. *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979).

Kister made repeated threats of violence, which caused Dawson to place and keep him in administrative segregation. (*See, e.g.*, Doc. 19-1 at 2; Doc. 19-2 at 17; Doc. 19-3 at 9, 11, 27). So no reasonable jury would infer that Kister's placement in administrative segregation wasn't reasonably related to a legitimate governmental goal. And Kister's jail kiosk communications show that he understood the non-punitive nature of his administrative segregation placement. (Doc. 19-2 at 23; Doc. 19-5 at 14; Doc. 19-7 at 42). They also establish that Kister was generally satisfied with his placement in administrative segregation until mid-October 2018. (*See* Docs. 19-2 to 19-10). In addition, when Kister requested release from administrative segregation in October 2018, Dawson was amenable to it. But after the Sheriff consulted with the Jail's psychiatrist, he decided not to grant the request for safety and security reasons. (Doc. 19-4 at 3; Doc. 19-10 at 22, 24–25, 28–29). In sum, there's no evidence Dawson intended Kister's placement in administrative segregation as punishment. So Kister's claim that Dawson violated his right to be free from cruel and unusual punishment fails.

### B. Procedural Due Process

Kister also challenges the Magistrate Judge's recommendation that the court dismiss his procedural due process claim. According to Kister, there's "no question" he had a liberty interest in avoiding administrative segregation because there were differences in the privileges afforded pretrial detainees in general population and those in administrative

segregation. For example, Kister claims that detainees housed in general population had "freedom and access to the amenities and shower from 4:00 am to 10:00 pm everyday" while those housed in administrative segregation did not. (Doc. 38 at 2–3).

This argument is duplicative of Kister's answer to Dawson's Special Report. (Doc. 22 at 3). The Magistrate Judge considered the restrictions of administrative segregation in his report and correctly determined that these restrictions didn't violate Kister's procedural due process rights. *See Anderson v. Chapman*, 604 F. App'x 810, 813 (11th Cir. 2015) (Pretrial detainee's "confinement in administrative segregation under conditions substantially similar to those experienced by the general jail population does not implicate a liberty interest.") (citing *Sandin v. Connor*, 515 U.S. 472, 485–86 (1995)).[1]

The Magistrate Judge also rejected Kister's procedural due process claim because Kister: (1) never requested a hearing, (2) understood the non-punitive nature of his placement, and (3) understood he could file a grievance about the placement. Though Kister argues otherwise, review of the record establishes that Kister didn't lodge repeated requests about his placement. Instead, he filed grievances about a host of other issues.

Kister then repeats the argument that his placement in administrative segregation for 609 days violated his due process rights because Dawson didn't afford him a hearing or meaningful review. (Doc. 38 at 1, 2). This is again duplicative of Kister's arguments in his answer to Dawson's Special Report. (Doc. 22 at 2). And when Kister requested

---

[1] The Magistrate Judge applied *Sandin*'s standard because Kister argued his administrative segregation amounted to punishment. But "[a] pretrial detainee need not meet the *Sandin* standard to establish his right to a due process hearing before being placed in disciplinary segregation." *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1348 (11th Cir. 2016). In any event, the record establishes that Kister was in administrative segregation, not punitive segregation. And the Magistrate Judge correctly determined that Kister did not request a review of his placement for most of the time he was in administrative segregation. Plus, once Kister requested review of his placement in administrative segregation, Dawson looked into it. *See Johnson v. Houston Cty.*, 758 F. App'x 911, 916 (11th Cir. 2018) (a periodic review "is a procedural protection sometimes afforded to those confined in administrative segregation"). So even if the Magistrate Judge erred in applying *Sandin*, Kister hasn't shown that Dawson violated his right to procedural due process.

that Dawson meet with him to discuss his placement in segregation, he received a meaningful review. In short, after Kister requested release from administrative segregation, Dawson said he was willing to move him, but the Sheriff, after consultation with a psychiatrist, decided not to grant the request for safety and security reasons. (Doc. 19-4 at 3; Doc. 19-10 at 22, 24–25, 28–29). So the court finds that Dawson didn't violate Kister's right to procedural due process.

### C.   Motion for Additional Discovery

Kister finally argues that the court should grant his motion for more discovery because the documents he requested weren't in Dawson's Special Report and are relevant. (Doc. 38 at 3). But as explained in the Magistrate Judge's report, Kister's second motion for more discovery was duplicative of a discovery motion that the Magistrate Judge had already ruled on. It was also untimely. So the court will overrule this objection to the report and recommendation.

\* \* \*

In summary, having reviewed and considered de novo all the materials in the court file, including the report and recommendation and Kister's objections, the court **ADOPTS** the Magistrate Judge's report and **ACCEPTS** his recommendation.

The court will enter a separate order that **DENIES** Kister's second motion for leave to conduct more discovery (doc. 30), **GRANTS** Dawson's motion for summary judgment (doc. 19), and **DISMISSES** this case **WITH PREJUDICE**.

**Done** on March 23, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE